**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

JESSICA NAPOLITANO, on behalf of  :
herself and all others similarly situated, :
            :
      Plaintiffs,  :   Civil Action No. 15-2732 (FLW)
            :
   v.         :
            :    **OPINION**
            :
RAGAN & RAGAN, A Professional  :
Corporation and JOHN DOES 1-25, :
            :
      Defendants. :

_____ :

**<u>WOLFSON, United States District Judge</u>:**

  Defendant Ragan & Ragan ("Defendant"), pursuant to Fed. R. Civ. P. 12(c), moves for Judgment on the Pleadings with respect to Plaintiff Jessica Napolitano's ("Plaintiff") Complaint, which accuses Defendant of violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.* Plaintiff alleges that Defendant violated the FDCPA when it mailed four collection letters on its law firm letter head with electronically produced, facsimile attorney signatures that were in fact not "from" an attorney in any meaningful sense. In the instant matter, Defendant seeks dismissal, arguing, *inter alia*, that Plaintiff has not established Article III standing or stated a claim under the FDCPA. Plaintiff opposes Defendant's Motion, and cross-moves to amend her Complaint. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings, and **DENIES** Plaintiff's Cross-Motion to Amend the Complaint. However, in lieu of dismissal, Plaintiff may file, before the Magistrate Judge, a second motion for leave to amend her Complaint.

## FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

At some point prior to July 8, 2014, an obligation was incurred by Plaintiff, owed to "various medical facilities, i.e., Kimball Medical Center and Community Medical Center." Compl., ¶ 14. Also prior to that date, the debt incurred by Plaintiff was assigned, or sold, to Senex Services Corp. ("Senex"). *Id*. at ¶ 15. As alleged, Defendant, a law firm, was in the business of collecting debts incurred for personal, family, or household purposes on behalf of creditors. *Id*. at ¶ 20.

Defendant mailed Plaintiff four substantially similar collection letters, generic in form, dated July 8, 2014.[2] *Id*. at ¶¶ 21-22, 25. Each of the collection letters were printed on Defendant's law firm letterhead stating: "This is to advise you that we have been retained by a creditor for the collection of this debt." *Id*. at ¶ 21; *see* Montoya Decl. Ex. A. Furthermore, all four letters informed Plaintiff that she has "received a previous letter from this office. Be advised that there was an error in the previous letter and it should be ignored. This letter contains the correct information." *Id*. at ¶ 24. The letters also stated the amount due to Defendant on behalf of a particular creditor, as well as the creditor account number and Defendant's file numbers. *Id*. at ¶ 25. Lastly, and most importantly, the collection letters all bore a mechanically reproduced, facsimile signature of W. Peter Ragan, Jr., an attorney at Defendant's law firm. *Id*. at ¶ 26; *see* Montoya Decl. Ex. A.

On April 17, 2015, Plaintiff filed this putative class action, one-count Complaint, individually and on behalf of a class of all others similarly situated, *id*. at ¶¶ 4, 11, alleging that Defendant violated §§ 1692e, 1692e(3), and 1692e(9) of the FDCPA by mailing collection letters

---

[1]    For the purposes of a motion for judgment on the pleadings, like a motion to dismiss, all factual allegations are taken from Plaintiff's Complaint, and assumed as true. *See In re Burlington,* 114 F.3d 1410, 1426 (3d Cir. 1997).

[2]    Although the letters were similar, each letter was sent in connection with a different debt owed to a particular creditor.

on its firm letterhead, containing an attorney signature without it being "from" an attorney in any meaningful sense. *Id.* at ¶¶ 27, 30-35. To that end, Plaintiff alleges that, "[t]he collection letters created the false and misleading impression that the communications were from an attorney when, in fact, they were not really 'from' an attorney in any meaningful sense of the word." *Id.* at ¶ 27. Stated differently, Plaintiff's sole theory of the case is that the form letters, containing the electronically reproduced attorney signature, give the semblance that the attorney who signed the letter personally reviewed Plaintiff's file, when in reality he did not conduct any meaningful review before signing the letters. Based on that conduct, Plaintiff alleges that Defendant's debt collection efforts violated 15 U.S.C. §§ 1692e, 1692e(3), and 1692e(9) of the FDCPA. *Id.* at ¶ 31.

Defendant filed its Answer on June 12, 2015, denying the allegations in Plaintiff's Complaint. As an affirmative defense, Defendant claims that Plaintiff lacked standing to bring suit because neither she nor the putative class had suffered an injury-in-fact. Def.'s Answer, p. 6. The Magistrate Judge, on September 10, 2015, entered a Scheduling Order, which set a deadline of November 13, 2015, to file a motion to amend the pleadings. The Scheduling Order also initially set discovery to close by February 26, 2016.

Without engaging in dispositive motion practice, discovery commenced. While some issues with respect to discovery arose, the Magistrate Judge scheduled a settlement conference on March 28, 2016, and intended to extend discovery deadlines if the matter did not settle. Ultimately, the parties were unable to settle. Thereafter, the Magistrate Judge permitted Defendant to file its Motion for Judgment on the Pleadings on May 27, 2016, and stayed discovery pending a decision on this motion. Plaintiff then sought consent from this Court to file an amended complaint. I denied that request, and directed Plaintiff to file a motion for leave to amend the complaint.

In the instant matter, Defendant move for judgment on the pleadings, arguing that Plaintiff lacks standing to bring suit, and that Plaintiff failed to state a claim under the FDCPA. In response, Plaintiff opposed Defendant's motion, and at the same time, cross-moved to amend the Complaint under Rule 15(a).[3] I will first address Plaintiff's cross-motion to amend, before discussing standing and the merits of Plaintiff's claims.

## DISCUSSION

## I. Motion to Amend

Plaintiff cross-moves for leave to amend the Complaint to include additional facts to bolster standing allegations and her claims under the FDCPA. With regard to standing, because I find that Plaintiff has standing to bring suit, *see infra*, no additional allegations are necessary in that regard. As to Plaintiff's request to amend her FDCPA claims, the decision to grant or deny leave to amend a complaint lies within the discretion of the district court. *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518 (3d Cir. 1988). This discretion is broad pursuant to Fed R. Civ. P. 15(a).[4] *See Phillips v. Greben*, No. 04-5590, 2006 U.S. Dist. LEXIS 78419, at *15 (D.N.J. Oct. 27, 2006); *Posey v.*

---

[3] In connection with her motion to amend, Plaintiff has submitted a proposed amended complaint.

[4] Defendant argues that Plaintiff's request for leave to amend should be analyzed under Fed. R. Civ. P. 16(b), governing modifications of scheduling orders, because Plaintiff's deadline to amend pleadings, under the Magistrate Judge's Scheduling Order, has passed. "Rule 16 requires a moving party to demonstrate good cause for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading." *Schwartz v. Avis Rent a Car System, LLC*, No. 11-4052, 2013 U.S. Dist. LEXIS 70926, at *2 (D.N.J. May 20, 2013) (internal citations and quotations omitted). I find that good cause exists in this case. The delay occurred because the parties engaged in discovery and settlement discussions with the Magistrate Judge. In fact, Defendant did not choose to file a motion to dismiss pursuant to Fed. R. Civ. P. 12, at the outset; rather, it waited until settlement discussions stalled before filing the instant motion under Rule 12(c). Plaintiff's cross-motion was filed in response to Defendant's motion for judgment on the pleadings. Accordingly, I find good cause exists under Rule 16(b).

*NJR Clean Energy Ventures Corp.*, No. 14-6833, 2015 U.S. Dist. LEXIS 146688, *5-6 (D.N.J. Oct. 29, 2015).

When considering a motion to amend, "[t]he Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d. Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Nonetheless, a court may deny a plaintiff leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, prejudice and futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Under Third Circuit precedent, a "futile" amendment is one that fails to state a claim upon which relief could be granted. *In re Burlington*, 114 F.3d at 1434; *Grayson v. Mayview State Hospital*, 293 F.3d 103, 113 (3d Cir. 2002). Thus, in determining whether a complaint, as amended, is futile, the district court must apply the sufficiency standard set forth under Rule 12(b)(6). *Shane*, 213 F.3d at 115. "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id*; *Marrin v. Capital Health Sys.*, No. 14-2558, 2015 U.S. Dist. LEXIS 10243, at *10 (D.N.J. Jan. 29, 2015).

Here, on Plaintiff's motion to amend, Defendant does not argue, and the Court does not find, that any undue delay, dilatory motive or prejudice exists. Instead, Defendant argues that Plaintiff's proposed amendments as to standing under Article III are futile. Because I find that Plaintiff has standing based on Plaintiff's original Complaint, *see infra*, I need not discuss Defendant's arguments in this regard. However, the Court must still consider whether Plaintiff's

proposed amendments as to her substantive FDCPA claims meet the futility standard. I will address that question later in this Opinion. Next, I turn to the issue of standing.

## II.     Rule 12(c) - Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). The standard that a court applies on such a motion is the same standard that a court applies in deciding a motion to dismiss pursuant to Rule 12(b)(6). *Turbe v. Government of Virgin Islands,* 938 F.2d 427 (3d Cir. 1991); *see also Spruill v. Gillis,* 372 F.3d 218, 223 n. 2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards"). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted); *see also McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)). All reasonable inferences must be made in the non-moving party's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

Indeed, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007)). The court will only grant a motion under Rule 12(c) if "it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations[.]" *Celgene Corp. v. Teva Pharms. USA, Inc.,* 412 F. Supp.

2d 439, 443 (D.N.J. 2006).  Furthermore, "the motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele v. Fed. Reserve Bank of N.Y.,* 359 F.3d 251, 253 (3d Cir.2004) (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)).

In sum, a complaint survives a Rule 12(c) motion if it alleges "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.    Standing

Article III of the United States Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). *See Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alterations original).

To demonstrate standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (internal quotations and citations omitted). "The plaintiff, as the party invoking federal

jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *In re Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. A harm is concrete only "if it is 'de *facto*'; that is, it must actually exist"—it cannot be merely abstract. *In re Nickelodeon*, 827 F.3d at 272 (quoting *Spokeo*, 136 S. Ct. at 1548). However, a harm need not be tangible, to be concrete. To determine whether an "intangible" harm constitutes an injury-in-fact sufficient for standing purposes, *Spokeo* set forth two tests: The first test is of a historical nature and asks whether the purported "intangible" injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (citation omitted). If so, it is likely to be sufficient to satisfy the injury-in-fact element of standing. *Id.*

The second test asks whether Congress has expressed an intent to make an injury redressable. Even if an injury was "'previously inadequate in law'" under the first test, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)) (alteration original); *see also Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058, at *13 (D.N.J. May 25, 2017) (citing *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017) ("[C]ourts should look to. . . whether Congress has elevated it to the status of a legally cognizable, redressable injury.").

However, the *Spokeo* court cautioned that in the context of statutory violations, like those alleged in this case under FDCPA, allegations of a "bare procedural violation [under a statute], divorced from any concrete [or substantive] harm" cannot satisfy the injury-in-fact requirement. *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Stated differently, congressional "elevation" of previously inadequate injuries is not limitless, and not every "bare" violation of a right granted by a statute is necessarily injurious. Rather, a violation must result in a "concrete" harm. That requirement remains in circumstances where a statute "purports to authorize [a] person to sue to vindicate [a statutory procedural] right." *Id.*; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").

Thus, standing based on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural. A mere "procedural right" is defined as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." *In re Michaels Stores, Inc.*, No. 14-7563, 2017 U.S. Dist. LEXIS 9310, at *17 n. 12 (D.N.J. Jan. 24, 2017) (quoting *Landrum v. Blackbird Enters., LLC*, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016)) (internal citations omitted) (alteration original); Black's Law Dictionary (10th ed. 2014). On the other hand, a "substantive right" is "[a] right that can be protected or enforced by law; a right of substance rather than form." *Id.* (citing *Landrum*, 214 F. Supp. 3d at 571) (internal citations omitted) (alteration original); Black's Law Dictionary (10th ed. 2014). "To the extent that a violation of the procedural right has no effect on the substantive right,

the bare procedural violation does not cause an injury of the sort that, alone, would support standing." *Id.*

Importantly, the Third Circuit has advised that *Spokeo* was not intended to significantly alter the traditional standard for the establishment of standing by creating a "requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 637 ("*Spokeo* itself does not state that it is redefining the injury-in-fact requirement. Instead, the circuit court reemphasizes that Congress "has the power to define injuries that were previously inadequate in law.") (internal citation omitted). Adhering to the principles of *stare decisis*, the Third Circuit held that the Supreme Court did not alter the standing jurisprudence until it explicitly states otherwise. *Id.* at 638.

Relevant here, post-*Spokeo*, the Third Circuit has not addressed whether a violation of the FDCPA can give rise to a concrete injury. The Third Circuit has noted, however, in a Fair Credit Reporting Act case, that "the mere technical violation of a procedural requirement of a statute" does not always "constitute an injury in fact," and that *Spokeo* does not stand for the proposition that a plaintiff automatically meets the injury-in-fact requirement simply because a statute grants them a statutory right. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 638 (citing *Spokeo*, 136 S. Ct. at 1549) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

Courts in this district have considered whether an alleged violation of the FDCPA is considered an injury-in-fact for standing purposes. *See e.g., Thomas v. Youderian*, No. 16-1408,

2017 U.S. Dist. LEXIS 16585, at *20-21 (D.N.J. Feb. 3, 2017) (finding concrete injury where the plaintiff allegedly received a collection letter notifying him that a small convenience fee would be charged for payments made by credit card); *Carney v. Goldman*, No. 15-260, 2016 U.S. Dist. LEXIS 177087, at *14 (D.N.J. Dec. 22, 2016) (holding that the plaintiffs satisfied the concreteness requirement of standing, when they alleged that the debt collector misstated the amount of debt owed in their collection letters); *Blaha v. First Nat'l Collection Bureau, Inc.*, No. 16-2791, 2016 U.S. Dist. LEXIS 157575, *19 (D.N.J. Nov. 10, 2016) (concluding that the allegation that the debt collector misrepresented the legal status of the debt in the collection letter is sufficiently concrete to confer Article III standing); *cf. Benali v. AFNI, Inc.*, No. 15-3605, 2017 U.S. Dist. LEXIS 783, at *16 (D.N.J. Jan. 4, 2017) (holding, on a motion for summary judgment, that the plaintiff did not establish a concrete injury because, based on his testimony that he knew the debt was not actually his, there was no risk that plaintiff would have paid the convenience fee).

Specifically regarding this case, section § 1692e generally prohibits debt collectors from employing "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and §1692e(3) includes in this standard the "false representation or implication that. . . [a] communication is from an attorney." 15 U.S.C. § 1692e(3). Section 1692e(9) further prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 422 (3d Cir. 2015). Here, Plaintiff brings claims under both provisions. Plaintiff alleges that the collections letters were not "from" an attorney in any "meaningful" sense because, despite the fact that a facsimile of an attorney's signature appeared on the collection letters which featured Defendant

law firm's letterhead, an attorney had not actually reviewed the case prior to the issuance of the letters, thus violating §§1692e(3) and e(9).

When considering violations of § 1692e in general, the trend favors finding concrete injury under the FDCPA where violations of the statute have been alleged. *Thomas*, 2017 U.S. Dist. LEXIS 16585, at *16. Courts have reasoned that Congress enacted the FDCPA "to eliminate abusive debt collection practices and to promote further action to protect consumers against debt collection abuses," and that the allegations, such as the defendant made false and misleading statements to plaintiff about the status of the debt, "is precisely [the harm] that ... the statute was intended to guard against." *Blaha*, 2016 U.S. Dist. LEXIS 157575, at *22-23. Therefore, because "'[t]he FDCPA unambiguously grants recipients of debt-collection letters ... a right to be free from abusive collection practices,' including the use of false and misleading representations," courts in this district have found that a plaintiff establishes the concreteness requirement under Article III when he or she alleges that a defendant violated the FDCPA when the debt agency sent collection letters containing, *inter alia*, false and misleading statements. *Fuentes v. AR Res., Inc.*, No. 15-7988, 2017 U.S. Dist. LEXIS 48923, at *11 (D.N.J. Mar. 31, 2017) (citing *Carney*, 2016 U.S. Dist. LEXIS 177087, at *13-16).

In fact, an overwhelming majority of the courts in this district have found that various types of violations under § 1692e give rise to concrete, substantive injuries sufficient to establish Article III standing. *Fuentes*, 2017 U.S. Dist. LEXIS 48923, at *13 (quoting *Pisarz v. GC Servs. Ltd. P'ship*, No. 16-4552, 2017 U.S. Dist. LEXIS 42880, at *12 (D.N.J. Mar. 24, 2017) (quotation omitted) (collecting cases)). *See also Bernal v. NRA Grp., LLC*, 318 F.R.D. 64 (N.D. Ill. 2016); *Bock*, 2017 U.S. Dist. LEXIS 81058, at *17 (quoting *Thomas*, 2017 U.S. Dist. LEXIS 16585, 2017 WL 1250988, at *7); *Carney*, 2016 U.S. Dist. LEXIS 177087, at *14 (holding that plaintiff's

allegations that defendant violated § 1692e when it sent collection letters containing false and misleading statements about the amount of debt owed satisfied the Article III concreteness requirement); *Blaha,* 2016 U.S. Dist. LEXIS 157575, at *10 (concluding that plaintiff established a concrete injury, where defendant allegedly sent to plaintiff a collection letter offering settlement of a time-barred debt, but failed to disclose the legal status of that debt); *Thomas,* 2017 U.S. Dist. LEXIS 16585, at *1 (finding standing where the plaintiff alleged a violation of sections 1692e and 1692f arising from allegedly false and deceptive language in a collection letter concerning a convenience fee to be charged for the use of a credit card to pay the debt.); *Pisarz,* 2017 U.S. Dist. LEXIS 42880, at *16 (holding that the allegation that a creditor failed to disclose its identity in a voice message left in violation of plaintiff's statutory rights under sections §§1692d and 1692e was sufficiently concrete for Article III standing.); *Fuentes,* 2017 U.S. Dist. LEXIS 48923, at *13-14 (holding that plaintiff alleged a concrete injury by alleging that defendant represented that it was entitled to charge a credit card convenience fee that was not authorized by law or the contractual agreement).

In this case, it is evident that Plaintiff alleges a particularized and concrete injury, namely that the debt collection letter sent to Plaintiff was allegedly deceptive by falsely implying that an attorney had meaningfully reviewed the case. Plaintiff avers that particular conduct violates the FDCPA. Indeed, Plaintiff has a substantive, and not merely procedural, statutory right under the FDCPA to be free from receiving allegedly false or deceptive information relating to the collection of a debt. Because of the alleged violation, Plaintiff was placed at risk of economic injury by potentially being deceived. Accordingly, Plaintiff has standing to bring suit.

**IV.    § 1692e**

Courts have repeatedly held that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to [the Act's] purposes," *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013), and, as such, courts analyze the communication giving rise to the FDCPA claim "from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation marks omitted). "The basic purpose of [this] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted). Accordingly, the FDCPA prohibits a broad range of false and misleading debt collections activities. Relevant here, an attorney sending a debt collection letter without having meaningfully reviewed the case prior to issuing a collection letter falls within this broad range of false and misleading activities or tactics. *See Bock v. Pressler & Pressler, LLP*, 30 F. Supp. 3d 283, 287 (D.N.J. June 30, 2014) (citing *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1001-1003 (3d Cir. 2011), cert. denied, 132 S. Ct. 1143 (2012)).

Indeed, "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Feuerstack v. Weiner*, No. 12-4253, 2014 WL 3619675, at *4 (D.N.J. July 22, 2014).  In that regard, letters sent by attorneys-debt collectors that have not been adequately reviewed by an attorney could "give the debtor the false impression that [they] [] were communications from an attorney," when, in fact, "they were not 'from' the attorney in any meaningful sense of the word." *Lesher*, 650 F.3d at 999.  Therefore, the Third Circuit, relying on the Second Circuit's decision in *Clomon v. Jackson*, 988 F2d 1314, 1320-21 (2d Cir. 1993), has deemed these types of letters as false or misleading within the meaning

of FDCPA. *Lesher*, 650 F.3d at 1000-1003 (affirming district court's summary judgment in favor of plaintiff, and finding that a collection letter mailed on attorney letterhead without meaningful attorney review is a §1692e FDCPA violation); *Bock*, 30 F. Supp. 3d at 294; *see Brown*, 464 F.3d at 454-55; *Rosenau*, 539 F.3d at 223 (concluding that a debtor might reasonably infer that a collection letter falsely implying that it was from an attorney, was from an attorney even though it was not). In *Clomon*, the Second Circuit has explained this practice, stating that an attorney signature implies that:

> the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e.

*Clomon*, 988 F.2d at 1321. The "meaningful attorney involvement" rule exists to curb the tactic of using an electronically produced, facsimile of an attorney's signature without an attorney's meaningful review. *Id.* Absent a disclaimer that makes clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney who might pursue legal action if the recipient does not pay the debt, letters containing electronically produced facsimile attorney signatures are inherently suspect. *See Lesher*, 650 F.3d at 1001 (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005)); *see also Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009) ("We caution lawyers who send debt collection letters to state clearly, prominently, and conspicuously that although the letter is from a lawyer, the lawyer is acting solely as a debt collector and not in any legal capacity when sending the letter. The disclaimer must explain to even the least

sophisticated consumer that lawyers may also be debt collectors and that the lawyer is operating only as a debt collector at that time.").

Here, Plaintiff has not sufficiently stated a claim under the FDCPA. Rather, Plaintiff has merely alleged that Defendant violated the FDCPA by mailing four generic collection letters on its firm letterhead, containing an electronically reproduced facsimile of an attorney signature. Compl., ¶¶ 27, 30-35. In addition, based on the inclusion of an electronic reproduced attorney signature, in her proposed amendment complaint, Plaintiff adds that upon information and belief, (i) no attorney reviewed the letters prior to them being mailed; (ii) no attorney reviewed Plaintiff's account prior to the letters being mailed; (iii) no attorney made "a reasoned, professional judgment that the amounts sought on the form letters were owed by the Plaintiff or that the Plaintiff was actually delinquent on these alleged debts"; and (iv) Defendant was not acting in a legal capacity as a law firm when it mailed out the letters. Proposed Am. Compl., ¶¶ 32-36. In both complaints, Plaintiff's sole theory of the case hinges on the presence of the electronically reproduced attorney signature, and Plaintiff provides no allegations surrounding the circumstances of the letters that would imply that Defendant violated the FDCPA. In other words, by only pointing to the electronically reproduced attorney signature, Plaintiff accuses Defendant of violating the FDCPA by failing to meaningfully review her collection files.

Contrary to Plaintiff's theory of the case, there is no authority in this district that stands for the proposition that mere presence of an electronically-reproduced attorney signatures is a *per se* violation under the FDCPA. Hence, simply alleging that a collection letter contains an electronic, facsimile of an attorney signature cannot adequately plead a FDCPA violation under the "meaningful review" standard. Instead, Plaintiff must allege what specific elements of the letters created the impression that the attorney who signed the collection letters was not meaningfully

involved. Similar threadbare allegations regarding collection letters like the ones at issue, have been found by courts in this district to be insufficient to state a claim under the FDCPA.

For example, in *Barata v. Nudelman, Klemm, & Golub, P.C.*, No. 13-4274, 2015 U.S. Dist. LEXIS 20280 (D.N.J. Feb. 19, 2015). The plaintiffs alleged that collection letters signed in defendant law firm's name were misleading because they implied attorney review while the law firm was in fact acting solely as a debt collector and not in any legal capacity. *Barata*, 2015 U.S. Dist. LEXIS 20280, at *3. The plaintiffs further alleged that, because of the sheer number of collection letters sent by the defendants to the plaintiffs, defendants were necessarily incapable of meeting the meaningful attorney review standard. *Id.* at *3-4. However, the court found that these bald allegations did not contain sufficient factual allegations to imply that the defendants had not provided meaningful attorney review prior to sending the collection letters. *Id.* at *7 ("The only factual basis for this allegation is the 'number of collection letters' sent by [defendants], a circumstance that supposedly implies that meaningful attorney review was 'impossible.'"). The court acknowledged that there may be scenarios where "an impossibly large number of letters [produced] in a short time" would, in combination with other facts, suggest "that no attorney gave the letters meaningful attorney review." *Id.* at *7-9. "To be remotely plausible, however, such an allegation would have to give some notion of how many letters were produced, how many attorneys produced them, and the length of time involved." *Id.* But the allegations in *Barata*, the court explained, "[fell] short of even suggesting such facts"; instead, the plaintiff relied on the "hope" that discovery would produce the necessary, corroborating facts. Indeed, the court found that there were no allegations made by the plaintiff as to how many collection letters were sent to debtors, nor were there allegations as to how many attorneys had worked on the letters, over what period of time. *Id.* at *9; *see also Bock*, 30 F. Supp. 3d at 283 (awarding summary judgment for

plaintiff where, *inter alia*, the evidence showed that a single attorney gave an average of 4 seconds of review before signing each collection complaint). Thus, the court concluded that "[t]he Complaint [was] based on nothing more than the 'belief that after inquiry that [sic] it [would] likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Id*. at *9. Commenting that "[t]here [was] no indication that [the plaintiff] conducted any pre-complaint investigation at all," *id*. at *10, the court dismissed the complaint without prejudice.

Similarly, in *Morales v. Pressler & Pressler, LLCP*, the court held that the plaintiff's amended complaint was devoid of factual support for a FDCPA claim where "[t]he only relevant fact to support Plaintiff's claim that Defendant sent a collection letter and filed a collection complaint without meaningful attorney review [was] that [an attorney] 'signed the Collection Complaint as an attorney employed by Pressler.'" *Morales v. Pressler & Pressler LLCP*, No. 15-236, 2015 U.S. Dist. LEXIS 49928, at *6 (D.N.J. Apr. 13, 2015). In *Morales*, the plaintiff alleged — as in this case — in a conclusory manner that the defendant law firm sent a collection letter, among others, without meaningful attorney review, because an attorney "signed the Collection Complaint as an attorney employed by Pressler." *Id.* at *6. By pleading in such a manner, the court found that it was evident that the "Plaintiff [was] hopeful that his conclusory allegations contained in the Amended Complaint [would] be supported once discovery [had] been completed . . . ." *Id*. The court added that "[t]he mere hope that discovery will produce some evidence to support an FDCPA claim, without more, is insufficient to permit such a claim to proceed beyond the motion to dismiss stage." *Id*. As in *Barata*, the complaint was dismissed. *Id*. at *7; *see Vargas v. Frederick J. Hanna & Assocs., P.C.*, No. 12-3802, 2013 U.S. Dist. LEXIS 188002 at *2, *6 (D.N.J. Feb. 14, 2013) (finding that the plaintiff's sole allegation that the debt collection letter was

sent by the defendant and that it was on law firm letterhead "failed to allege what in the Letter was false, or what about the Letter was misleading to Plaintiff").

In the present case, Plaintiff has not sufficiently pled that Defendant's collection letters were false or misleading. More particularly, Plaintiff has not adequately alleged what aspects of the letters would give the impression that the attorney did not meaningfully review Plaintiff's files. *See Morales*, 2015 U.S. Dist. LEXIS 49928, at *6-7. What underlies the "meaningful review" requirement is the burden on a plaintiff to ultimately prove that the attorney who signed the collection letters failed to conduct the necessary review, and that the attorney's signature was merely placed by the defendant law firm as an abusive debt collection tactic. Therefore, at the pleading stage, Plaintiff, here, must allege some factual allegations to support her assertion that the electronic reproduced attorney signature implies that the attorney did not conduct a meaningful review of her files. While Plaintiff proposes additional allegations that, based upon information and belief, no attorneys were involved in reviewing her file before sending the collection letters, *see* Proposed Am. Compl., ¶¶ 32-36, all of those conclusory allegations are based on the presence of the electronically reproduced attorney signature in the collections letters, and nothing more.

Like in *Barata*, Plaintiff does not allege how many collection letters were sent to other debtors, nor does she allege how many attorneys had worked on the letters, over what period of time. These types of allegations — if properly pled — could provide an impression that Defendant was sending out mass-produced collection letters with little or no review of the files in connection with those letters.[5] *See Lopez v. Law Offices of Faloni & Assocs., LLC*, No. 16-1117, 2016 U.S.

---

[5]     In fact, in *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10-3920, 2012 U.S. Dist. LEXIS 25802, at *38-39 (E.D.N.Y. Feb. 28, 2012), the district court found that allegations regarding a large number of letters or complaints filed by defendant law firm, in conjunction with the number of letters signed by a particular attorney during a limited time period, sufficient to draw the inference, at the pleading stage, that the defendant failed to meaningfully review the collection

Dist. LEXIS 124730, at *9-11 (D.N.J. Sep. 14, 2016). Instead, Plaintiff, like the plaintiffs in *Morales* and *Barata*, apparently rests on the mere presence of the attorney's signature, as well as the assumption that discovery will prove her allegations, to satisfy her burden. However, Plaintiff cannot speculate as to the merits of her claims by making unsupported allegations. As the Complaint stands, it does not appear that Plaintiff conducted an adequate pre-complaint investigation in order to properly plead her claims. While the Federal Rules permit allegations upon information and belief, such pleading does not "relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to ... make claims ... without any factual basis or justification.'" *Barata*, 2015 U.S. Dist. LEXIS 20280, at *10 (internal citation omitted) (quoting Fed. R. Civ. P. 11, Notes of Advisory Committee on 1993 Amendments); *see also Giovanelli v. D. Simmons Gen. Contracting*, No. 09-1082, 2010 U.S. Dist. LEXIS 23685, at *17 (D.N.J. Mar. 15, 2010) ("A complaint cannot go forward based on unsupported allegations, coupled with the hope that something will turn up in discovery. 'Discovery ... cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded.'"). Accordingly, Defendant's motion for judgment on the pleadings is granted on this basis, and Plaintiff's FDCPA claims are dismissed without prejudice.

---

files. *Diaz,* 2012 U.S. Dist. LEXIS 25802, at *38-39; *Lang v. Winston & Winston, P.C.*, 2001 U.S. Dist. LEXIS 7480, at *6 (N.D. Ill. June 4, 2001) (denying motion to dismiss FDCPA claims where plaintiffs alleged, among other things, "the defendant sends out thousands of collection letters like the one sent to [the plaintiff] without conducting a meaningful attorney review of the accounts" and that "the letters defendant sends out are produced by a computer program that inserts information given to defendant by its creditor clients into pre-defined fields in a [form] letter").

**CONCLUSION**

For the foregoing reasons, Defendant's motion for judgment on the pleadings is **GRANTED**, and Plaintiff's Complaint is dismissed without prejudice. Additionally, Plaintiff's Cross-Motion to amend the Complaint is **DENIED**, and Plaintiff's proposed amended complaint shall not be filed. In lieu of dismissal, however, within 30 days from the date of this Opinion and Order, Plaintiff may file, before the Magistrate Judge, a second motion to amend to cure the deficiencies outlined in this Opinion as to her FDCPA claims.


DATED: August 17, 2017                    /s/      Freda L. Wolfson
                                          Freda L. Wolfson
                                          U.S. District Court Judge